UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WILTON J WILLIAMS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-04-2321 |
| | § | |
| LYONDELL-CITGO REFINING COMPANY LTD, | § | |
| | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

### I.

Before the Court is the defendant, Lyondell-Citgo Refining Company, LTD's motion for summary judgment and the plaintiff, Wilton J. Williams' response in opposition. In addition to the pending motion are the appendices and replies of the parties. The Court has reviewed the motion, response, replies and supporting data and determines that the defendant's motion is well taken and should be granted.

### II.

The facts underlying this dispute are relatively undisputed. The plaintiff began his employment with the defendant in the late 1970's. Through promotions, seniority and a merger, the plaintiff became eligible to seek a promotion to Chief Operator of the Sulfur Unit in 2001. However, the promotion required rigorous training and the passing of five qualifying examinations. In the meantime and while training, the plaintiff maintained his position as Chief Operator of the Environmental Unit. By July 2002 the plaintiff had completed sufficient training to pass two of the five examinations. By the end of 2002 he had completed the additional

training necessary to take and pass two additional examinations. However, it was necessary that the plaintiff pass the fifth examination within a certain time period in order to receive the promotion he sought.

In January 2003, while yet in training, the plaintiff failed to close a drain valve which the defendant alleges resulted in a chemical leak. As a result, the plaintiff was suspended without pay from February 4 through February 10. When the plaintiff returned to work on February 11 he was told that he was to attend a meeting with several of his co-workers and/or supervisors before assuming his routine. At that meeting, the plaintiff was told that he must take a competency examination. The plaintiff became upset and consulted with his union representative. They requested that the examination be delayed due to the fact that the plaintiff had become too ill during the meeting to take it.

When the meeting ended, the plaintiff reported to the company medical department and, later to his own physician. On February 12 the plaintiff did not report to work. Instead, he requested and was sent a Family Medical Leave Act (FMLA)[1] packet that he completed and submitted to the defendant on or about February 24. The defendant contacted the plaintiff and his physician to obtain information that it claimed was necessary to complete the packet.

During the plaintiff's absence, the defendant scheduled a meeting for March 13. That meeting was postponed due to the plaintiff's continued absence. At the next scheduled meeting on March 24, the plaintiff appeared and agreed to take the competency examination on

---

[1] Title 29 U.S.C. §§ 2615 and 2617(a)(1) and (2).

March 26 when he had been released by his doctor to return to work. However, before the meeting began the plaintiff had submitted early retirement paperwork and informed his supervisors of that fact during the meeting. Also during the meeting there were discussions about whether the plaintiff should withdraw his retirement papers. The defendant made it clear, however, that to return to work was to take a competency examination. The plaintiff did not withdraw his papers and did not return to work. The following day, the defendant denied the plaintiff's FMLA leave request.

### III.

The plaintiff contends that the defendant violated his rights under the FMLA by interfering, restraining and denying his rights under the FMLA. In this regard, the plaintiff is referring to his "right" to sick pay benefits under FMLA. In addition, the plaintiff asserts that the defendant "intentionally harassed, retaliated and discriminated against him in connection with the compensation terms, conditions and privileges of employment." In this regard, it appears that the plaintiff is contending that sick pay benefits were due him as a matter of company policy in addition to FMLA benefits and that they were also denied. Finally, the plaintiff asserts that the defendant's conduct amounts to retaliatory constructive discharge. The plaintiff contends that it is because he filed an FMLA claim on or about February 24 that the defendant sought to terminate him, thereby forcing him into early retirement.

The defendant describes the plaintiff's suit as constituting two claims: (a) a constructive discharge claim; and, (b) a claim for infliction of emotional distress. The defendant further asserts that, because these claims arise out of the same nucleus of facts, the plaintiff's intentional infliction claim is not actionable under Texas law, citing as authority *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005). The plaintiff counters that his suit is an entitlement

and retaliation claim for FMLA benefits and for sick pay benefits, not simply retaliation and discharge. The Court will address these issues hereinafter.

**IV.**

*A. Summary Judgment*

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc* ., 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* If the evidence rebutting the motion for summary judgment is only colorable or not significant probative, summary judgment should be granted. *Id.* at 249-50; *see also Lewis v. Glendel Drilling Co.,* 898 F.2d 1083, 108 (5th Cir. 1990), *cert. denied* , 112 S. Ct. 171 (1991).

Under Rule 56(c) of the Federal Rules of Civil Procedure, the moving party bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue for trial." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986); *Leonard v. Dixie Well Serv. & Supply, Inc.,* 828 F.2d 291, 294 (5th Cir. 1987). Where the moving party has met its Rule 56(c) burden, the nonmovant must come forward with "specific facts showing that there is a *genuine issue for trial."* *Matsushita* , 475 U.S. at 586-87 (quoting Fed. R. Civ. P.56(e)) (emphasis in original); *Celotex Corp. v. Catrett* , 477 U.S. 317 (1986); and *Leonard* , 828 F.2d at 294. To sustain the burden, the nonmoving party must produce evidence admissible at trial showing that reasonable minds could differ regarding a genuine issue of material fact.

*Anderson*, 477 U.S. at 250-51; 255. *Thomas v. Price,* 975 F.2d 231, 235 (5th Cir. 1992). In deciding a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255.

 *B. Relevant Provisions of FMLA*

Section 2617(a) of the FMLA makes it a violation of federal law for an employer to violate § 2615 as it relates to an FMLA eligible employee. Section 2615 addresses two areas of liability. Section 2615(a) addresses the issue of interference with FMLA rights by an employer in the context of harassment and discrimination that may be directed to an employee who attempts to exercise FMLA rights. Section 2615(b) addresses employer interference in FMLA proceedings or inquiries that are ongoing. The plaintiff's claim(s) appear to be brought under § 2515(a)(1) and (2). Section 2515(a)(1) provides:

> It shall be unlawful for an employer to interfere with, restrain, or deny the exercise or attempt to exercise any right provided under this subchapter.

Section 2515(a)(2) provides:

> It shall be unlawful for an employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

## V.

The plaintiff contends that he was denied sick pay benefits which he argues he is entitled to because he qualified for FMLA benefits. He relies on 29 U.S.C. § 2617(a) and *Strickland v. Water Works and Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1205 (11th Cir. 2001). The evidence is undisputed that the defendant denied the plaintiff sick pay benefits during his alleged

illness. However, there is no evidence that the plaintiff's FMLA claim was denied until March 24 save, the plaintiff's assertion that a union representative told him when he appeared for the March 24 meeting that the defendant was going to deny his FMLA claim. Thus, the plaintiff's assertion in this respect is not supported by the testimony of the person(s) whom he claims allegedly made the remark. Therefore, the Court proceeds to address the plaintiff's claim on the premise that the defendant did not deny the plaintiff's FMLA claim until March 24, the day that the plaintiff retired.

The plaintiff directs the Court to the Eleventh Circuit's opinion in *Strickland*. There, the plaintiff claimed that his employment was terminated after he left the job site because he was suffering a diabetic attack and could no longer perform the assigned tasks. As a result of his leaving, Strickland's supervisor charged him with insubordination and recommended termination. After a hearing, Strickland was discharged. The Eleventh Circuit spoke to two issues that are identified by the plaintiff in the case at bar. First, the Circuit distinguished between the employee's rights under the FMLA and his rights under his employer's paid sick leave policy. The Circuit pointed out that while the two are not mutually exclusive and may work together, they are separate benefits. Hence, when an employee's qualifies for leave under both the FMLA and the employer's paid leave policy, "the employer may either permit the employee to use his FMLA leave and paid sick leave sequentially, or the employer may require that the employee use his FMLA leave and paid sick leave simultaneously. *Strickland* 239 F.3d at 1205. Thus, when the illness of the employee qualifies under both the FMLA and the employer's sick leave policy, the employer may exhaust them simultaneously and not violate the FMLA. Therefore, the Court concludes that the FMLA does not expand or increase an employer's liability or responsibility under the employer's paid sick leave policy.

The record shows that the plaintiff returned his FMLA packet to the defendant on or about February 24 seeking leave and benefits coverage beginning February 11. After the packet was received by the defendant, the defendant's benefits department contacted the plaintiff at his home to obtain information that the defendant contends was necessary to process the plaintiff's request. The defendant also contacted the plaintiff's physician. Although the plaintiff points to these contacts as "ill-will" on the part of the defendant, there is no evidence that the contacts were unnecessary or out of order. Nevertheless, the plaintiff asserts that this conduct, informing him that his medical evidence was insufficient, checking on the status of his return, contacting his physician and being denied sick pay, was harassment and supports his charges under § 2515(a)(1) and (2). The Court disagrees.

The FMLA directs that an employer provide an employee 12 weeks of leave, whether paid or unpaid, when that employee has worked 1,250 hours in the preceding 12 months. 29 U.S.C. § 2611 (2)(A). Under the defendant's Sickness and Accident Disability Benefit Plan, a regular employee is entitled to sick pay allowances for non-industrial illnesses after six months of continuous service. An employee is required to "present evidence satisfactory to the Employer, showing that an absence is due to illness." In addition, the Plan reserves to the employer the right "to [require] an examination and treatment . . . by a physician or other agent of its own selection," to determine whether a claim is true. It follows that the defendant had a right to call the plaintiff and his physician(s) to verify the nature of the plaintiff's claimed illness and to determine whether the claimed illness qualified for sick pay benefits. Hence, the plaintiff's allegation that this conduct amounted to harassment and, therefore, violated § 2615(a)(1) or (2) is unfounded. Neither is it harassment for an employer to deny sick pay benefits when the employer is of the opinion that a claimed illness is feigned. In this case, the employer believed

that the illness claimed was feigned to avoid taking a required competency examination.

The evidence presented by the plaintiff, that his FMLA claim was denied on March 7, 2003, is also internally inconsistent and does not support his claim. The plaintiff claims that he received a call on March 7 from the defendant's FMLA coordinator, informing him that his FMLA and sick pay benefit claims were being denied. However, the evidence submitted to support this assertion is insubstantial. The written evidence is the plaintiff's own notes and they indicate that the FMLA coordinator returned the plaintiff's telephone call and that the subject of the call was sick pay. The plaintiff's notes go on to say: "Linda informed me that I did not have sufficient medical evidence to receive sick . . . He boss . . . made the decision to stop pay after evaluation." Hence, the plaintiff's own notes about his conversation with the FMLA coordinator do not support his claim that FMLA benefits were denied on March 7.

The FMLA recognizes that FMLA benefits and sick pay benefits are separate benefits. *Strickland*, 239 F.3d at 1205. Hence, an employee may be entitled to FMLA benefits although he does not qualify for sick pay under an employer's benefits plan. *Klaiber v. Rinaldi*, 2001 WL 823529 (M.D.N.C.) citing to *Blunt v. GES Exposition Svcs., Inc.*, 124 F.Supp. 847, 870 (D. Md. 2000). It follows that the opposite is true. Therefore, an employer may choose to apply qualified paid leave to FMLA absences. However, when an employee has depleted his annual paid leave or is otherwise disqualified from using it, he does not automatically get paid leave because he is statutorily entitled to FMLA leave. Hence, qualification under FMLA does not automatically qualify an employee for employer paid sick pay. And, where employer paid sick pay benefits have been exhausted or where the employee is otherwise disqualified to receive it, FMLA will not override the employer's exercise in judgment. Hence, an employer may provide FMLA leave on an unpaid basis. *See* 29 U.S.C. § 2612(c); *See also, Strickland*, 239 F.3d at

1205.

The Court is also of the opinion that the events of the March 24 meeting are irrelevant to the Court's consideration of the plaintiff's FMLA and sick pay claims because he had retired. First, the evidence fails to establish that the plaintiff was denied FMLA leave during his tenure as an employee. The fact that the plaintiff did not qualify for sick pay leave or did not receive sick pay does not mean that the plaintiff was also denied unpaid FMLA leave. Hence, whether the plaintiff was entitled to sick pay under the company Plan is a separate issue and does not raise a federal question, particularly under the FMLA. Because there is no evidence, separate from the company sick pay Plan, that the plaintiff was denied FMLA benefits before he retired, the Court HOLDS that the post-retirement FMLA denial is of no consequence. Had the defendant granted unpaid FMLA leave, the results would have been the same.

Next, the plaintiff asserts retaliatory constructive discharge in violation of the FMLA. In order to establish a claim of retaliation, an employee must prove that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment decision [forced to retire]; (3) the decision [employer's] was causally related to the protected activity. *Id.* at 1207. Constructive discharge requires that the employer make working conditions so intolerable that a reasonable employee would feel compelled to resign. *Hunt v. Rapides Healthcare Sys. LLC*, 277 F.3d 757, 771 (5th Cir. 2001). The test is an objective test and requires a court to look to the actions of the employer that relate to the FMLA claim that might cause an employee to retire.

As part of the plaintiff's argument that he was forced to retire, he relates statements allegedly made by three other employees in 2001 and 2002. The import of these remarks was that the plaintiff was encouraged by co-workers to retire because of his age. However, there is no evidence that the statements were part of a concerted effort on the part of the defendant to force

the plaintiff to retire. Nor is there evidence that the employer was aware of the alleged remarks. More importantly, there is no evidence that at the time, the plaintiff had an FMLA claim pending. In fact, the evidence is to the contrary. Moreover, there is no evidence, assuming the remarks were made, that they were more than stray remarks of the nature that are made in the workplace by co-workers. Hence, the Court concludes that any such remarks do not add weight to the plaintiff's claim(s) that are centered between January 26 and March 26, 2003.

The Court's conclusion concerning the plaintiff's retaliatory discharge allegation, that it is unmeritorious, is also supported by the circumstances under which the plaintiff was working in his effort to receive a promotion. The plaintiff was under great stress and had been for over two (2) years. The plaintiff desired a promotion to the position of Chief Operator of the Sulfur Unit. Thus, the pressure was self-imposed. Apparently, the defendant was concerned that the plaintiff's ambitions exceeded his capabilities. Hence, the pressure to fill the position was equally "real" to the defendant. The plaintiff was required to complete all training and successfully pass the required tests within a specific time frame. While the plaintiff had completed four of the five required tests, there is evidence that the defendant was concerned about the plaintiff's competency when the plaintiff failed to close a valve that resulted in a chemical leak.

When the plaintiff returned to work, his supervisors met with him concerning his competency. It is noteworthy that the question of competency referred to the plaintiff's ability to become and fulfill the position of Sulfur Operator of the Sulfur Unit. There is no evidence that, were the plaintiff not to qualify for the promotion he would have been terminated. It was the plaintiff's overall competence that was being questioned. Hence, the defendant's concerns about the plaintiff's progress and performance were proper.

Likewise, there is no evidence that the plaintiff was suffering any illnesses in January 2003 or at the time that he returned to work on February 11. Yet, during the meeting, the plaintiff described a serious illness that prevented him from taking a competency examination or performing his daily tasks. The plaintiff described his illness as an "excruciating headache, joint pains and vision problems." The record shows that the plaintiff visited the defendant's medical department and was released. He then scheduled a visit to his primary care physician, doctor Olivia Brannan. After testing, doctor Brannan described the plaintiff's illness as "anxiety, chronic headaches, joint pain, inability to focus, upset stomach and other aches and pains." The plaintiff also saw a psychiatrist and neurologist; however, no other diagnosis was revealed. All doctors advised the plaintiff to not return to work pending further evaluation. However, there is no evidence of any different medical condition and the plaintiff was released to return to work on March 26.

The Court concludes that the triggering event for the plaintiff's February illness was the demand by the defendant that the plaintiff take a competency examination. That was also the triggering event for the plaintiff's early retirement. The defendant was not convinced that the plaintiff was suffering from an eligible sick pay illness or that his conditioned rendered him incompetent and had set a meeting concerning the issue for March 13. That scheduled meeting came after the defendant informed the plaintiff on March 7 that he did not have sufficient evidence to qualify for sick pay. On March 12, the plaintiff's physician forwarded an additional work excuse. The March 13 meeting was then reset to March 24 at which time the plaintiff filed papers for early retirement. During the meeting, the plaintiff learned that the defendant would not permit him to return to work unless he agreed to take a competency examination. The plaintiff opted not to take the examination, apparently believing that failing it would result in his

termination.

It is clear that the plaintiff's decision to take early retirement was not based on an offer or suggestion to do so by the defendant. The fact that co-workers suggested retirement or that a union representative encouraged it does not establish an adverse employment action by the defendant. The plaintiff must establish that the defendant made working conditions so intolerable that a reasonable employee would feel compelled to retire. *Id.* Without recounting each detail, the evidence fails to support this element.

The plaintiff left a meeting after a heated discussion about his competence, claiming illness. While the plaintiff's doctors did not direct him to return to work until March 26, he never established, to the satisfaction of the defendant, that he was in fact ill. There is no evidence that during this period the plaintiff's FMLA claim had been denied or that he was entitled to paid FMLA leave. Finally, the evidence shows that when the defendant demanded that the plaintiff "return to work in three (3) days and take the handwritten competency exam" or be terminated, the plaintiff refused to withdraw his retirement decision. This demand by the employer had to do with the question of competency not illness. Hence, the undisputed facts fail to support a *prima facie* case of retaliatory constructive discharge due to illness.

Also, the fact that the plaintiff "feared" that he would be terminated flies in the face of his admission that the defendant wanted him to return to work and establish his competency for the position and promotion that he sought or for continued employment. The plaintiff retired before any word about termination was expressed--assuming that it was. And, a review of the relevant events compels the conclusion that the plaintiff's difficulties arose from what the defendant believed to be a contrived illness to cover for his competence. Because the plaintiff retired before the meeting and at a time when he had been released to return to work, the plaintiff's

claim of retaliatory constructive discharge is unfounded.

Finally, the plaintiff asserts that he suffered intentional infliction of emotional distress as a result of the defendant's FMLA conduct. The Court is of the opinion that this claim is subsumed in the plaintiff's retaliatory constructive discharge claim. *See Creditwatch, Inc. v. Jackson*, 157 S.W. 3d 814, 816 (Tex. 2005). Thus, the Court concludes that this claim too is unmeritorious.

The defendant's motion for summary judgment is Granted.

It is so Ordered.

SIGNED and ENTERED this 1st day of July, 2005.

_____
Kenneth M. Hoyt
United States District Judge